# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GISELE THISSEN and BRYAN THISSEN, | CASE NO. CV F 09-0376 LJO |
| Appellants, | **DECISION ON BANKRUPTCY APPEAL** |
| v. | |
| MD JOHNSON, U.S. BANKRUPTCY TRUSTEE FRESNO and MICHAEL H. MEYER, | |
| Appellees. / | |

## INTRODUCTION

Through this appeal of an interlocutory order to deny confirmation of a Chapter 13 plan, appellants present the following issue: Are the payments on a junior deed of trust "amounts scheduled as contractually due to secured creditors" when a Chapter 13 plan proposes to treat the junior deed of trust as an unsecured claim? As an initial matter, this Court GRANTS appellants' unopposed motion for leave to appeal the interlocutory order of the bankruptcy court. Having considered the substance of the parties arguments, including appellants' opening and reply brief, the excerpts of record, and the appellee's opposition, this Court AFFIRMS the decision of the bankruptcy court to hold that a wholly unsecured junior deed of trust is not "contractually due to secured creditors" within the meaning of 11 U.S.C. §707(b)(2)(A)(iii)(I), and should not be included on Form 22C, line 47 as a deduction to calculate the proposed disposable income of a debtor when treated as an unsecured claim in the Chapter 13 bankruptcy plan.

## BACKGROUND

Bryan and Giselle Thissen ("appellants") are debtors who filed a Chapter 13 petition on November 21, 2008. With their petition, appellants filed the required schedules of assets and liabilities. According to Schedule A, appellants own a house located on North Sandrini Avenue in Fresno,

1

California that is worth approximately $300,000 ("the residence"). According to Schedule D, for secured claims, the residence is encumbered by three deeds of trust with the following principal amounts still owing: (1) first deed of trust, Countrywide, $417,000; (2) second deed of trust, Washington Mutual, $110,886.30; and (3) third deed of trust, GE Money Bank/Green Tree ("Green Tree"), $40,159.93.

In a Chapter 13 bankruptcy, debtors are required to contribute all "projected disposable income" to unsecured creditors. 11 U.S.C. §1325(b)(1)(B). To determine the amount appellants would be required to contribute, appellants filed Official Form 22C entitled "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" ("Form 22C") with their Chapter 13 petition.[1] Form 22C is used to calculate, *inter alia*, how many years a debtor must pay into a Chapter 13 plan (the "applicable commitment period") and how much "disposable income" a debtor must pay to his or her unsecured creditors over the term of the plan. "Disposable income" calculations are based on the debtor's current monthly income ("CMI") and allowable deductions. 11 U.S.C. §1325(b)(2). On Form 22C, appellants indicate that their CMI is $19,005.18. Appellants annualized CMI is $228,062.16, an amount greater than the median family income applicable to debtors in California. Accordingly, the "applicable commitment period" for appellants' Chapter 13 plan is 60 months and their "disposable income" for purposes of determining the plan must be determined under 11 U.S.C. §1325(b)(3).

The focus of this appeal is whether appellants properly calculated the allowable deductions to determine their disposable income. Appellants may deduct from their CMI the "amounts reasonably necessary to be expended" for their maintenance or support. 11 U.S.C. §1325(b)(2). Courts determine "amounts reasonably necessary to be expended" by using a formula as set form in 11 U.S.C. §1325(b)(3); *In re Kagenveama*, 541 F.3d 868, 874 (9th Cir. 2008) ("*Kagenveama*"). One group of allowable deductions are set forth in Form 22C, Part IV, sub-part C, as "Deductions for Debt Payment." Within sub-part C of Part IV, debtors list as a deduction "Future Payments on Secured Claims" on line 47. The preamble to line 47 defines the payments that may be listed as follows:

> For each of your debts that *is secured by an interest in property that you own*, list the name of the creditor, identify the property securing the debt, state the Average Monthly

---

[1] Form 22C is also referred to in bankruptcy parlance as Form B22C or the Means Test.

2

> Payment, and check whether the payment includes taxes or insurance. The Average Monthly Payment is the *total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case*, divided by 60...(emphasis added).

On line 47 on Form 22C, appellants included as deductions, *inter alia*, a total of $1,358.43 as payments for the second and third deeds of trust ("junior deeds of trust") that encumber the residence. Based on these deductions, appellants report their "Monthly Disposable Income" as $511.06.

Appellants moved to value collateral as to the junior deeds of trust, pursuant to 11 U.S.C. §506(a)(1), Fed. R. Bankruptcy P. 3012, and *In re Lam*, 211 B.R. 39 (9th Cir. BAP 1997) ("*Lam* motions"). In support of each *Lam* motion, appellants filed a declaration stating that the residence is worth $300,000, which is less than the senior lien to Countrywide. In both *Lam* motions, appellants requested an order to value the residence "at $300,000.000 for the purposes of treating the claim of [the junior deed of trust] as an unsecured claim in the Plan and for the purpose of removing the lien of [the junior deed of trust] pursuant to the decision of *In re Lam*." The bankruptcy court granted appellants' unopposed motions to value the residence based on that fact that there was insufficient equity to support the junior deeds of trust. Order Granting Motion to Value, ER 122-23. According to the court's order, the junior deeds of trust are to be treated as unsecured claims in Appellants' Chapter 13 plan. *Id*.

Appellants' proposed Chapter 13 plan ("the Plan") incorporates the calculation of monthly disposable income from Form 22C. The Plan deducts payments for the junior deeds of trust, as "contractually due to secured creditors," and concludes that appellants' monthly disposable income is $511.06. Appellants multiply the monthly disposable income of $511.06 by the required 60-month commitment period to give a "projected disposable income" over the life of the Plan in the amount of $30,663.60.

Appellees objected to the deductions of the junior deeds of trust, as listed on line 47 of Form 22C. Appellees argued that because the junior deeds of trust are unsecured, appellants may not deduct them as secured claims when calculating disposable income. Appellees submit that appellants' disposable income should be $1,869.49 per month, rather than $511.06, based on the adjusted disposable monthly income that excludes the junior deeds of trust deductions. Appellees calculated appellants' projected disposable income as $111,425.40 over the 60-month period of the Plan.

The bankruptcy court agreed with appellees. The court found that based on appellants' schedules and subsequent *Lam* motions, the junior deeds of trust were wholly unsecured. Memorandum Decision Regarding Trustee's Objection to Confirmation of Chapter 13 Plan, ER 108-118 ("Decision"). As a result, the court concluded that Washington Mutual and Green Tree, as holders of the junior deeds of trust, were not "secured creditors" within the meaning of 11 U.S.C. §707(b)(2)(A)(iii)(I). Pursuant to 11 U.S.C. 1325(b)(1), the court sustained appellees' objection and denied appellants' Chapter 13 Plan. Subsequently, appellants brought the instant appeal.

## JURISDICTION

With the notice of appeal, appellants filed a Motion for Leave to Appeal Interlocutory Order. Appellees did not oppose this motion, and stipulated to a briefing schedule of this appeal. Nevertheless, as a court of limited jurisdiction, this Court must consider whether jurisdiction exists pursuant to Article III of the United States Constitution, and dismiss this action if jurisdiction is lacking. *Southern Pacific Transportation Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990), *cert. denied*, 112 S. Ct. 382 (1991).

Appellants have no right to appeal an interlocutory order without leave to do so. *In re Roderick Timber Co.*, 185 B.R. 601, 604 (9th Cir. BAP 1995). To determine whether to grant leave to file an interlocutory appeal from a bankruptcy court, the Court considers the following: (1) whether the order on appeal involves a "controlling question of law as to which there is a substantial ground for difference of opinion;" (2) whether an "immediate right to appeal will materially advance the ultimate termination of the litigation;" and (3) whether denying leave to appeal "will result in wasted litigation and expense." *Id*. For the following reasons, this Court grants appellants leave to appeal the interlocutory order.

The order on appeal involves a controlling question of law as to which there is demonstrable difference of opinion. The controlling question of law is whether a junior deed of trust is an amount "scheduled as contractually due to secured creditors" pursuant to 11 U.S.C. §707(b)(2)(A)(iii)(I) when a Chapter 13 plan proposes to treat the junior deed of trust as an unsecured claim pursuant to a *Lam* motion. The two United States Bankruptcy Judges at the Eastern District of California, Fresno Division have considered this issue and reached opposite conclusions. In this action, on February 12, 2009,

4

United States Bankruptcy Judge W. Richard Lee concluded that a junior deed of trust is not an amount "contractually due to a secured creditor" within the meaning of the applicable statute. The next day, United States Bankruptcy Judge Whitney Rimel concluded, under nearly identical facts, that the junior deed of trust *was* "contractually due" to secured creditors, and allowed the junior deeds of trust to be included on Form 22C, Line 47 as a deduction. *In re Armistead*, Case No. 08-17224-A-3 (E.D. Cal. 2009). These two cases, decided a day apart, illustrate the substantial difference of opinion on this controlling legal issue.

In addition, determination of this appeal will advance the action materially and will avoid wasted litigation and expense. The order to deny the Chapter 13 plan, if continued without resolution of this divided issue, may result in wasted litigation and expense in the event that order is not upheld. Both the debtors' attorney and the Chapter 13 Trustee have litigated this issue twice in this District, resulting in an unresolved split decision. Both parties have other actions pending that raise this issue. Thus, the parties stipulated to this appeal, and agree that wasted expense of litigation in other cases may arise unless this Court resolves this issue in a timely manner. Accordingly, resolution of this issue will provide guidance to the bankruptcy courts and practitioners, which will preserve judicial resources and avoid wasted and unnecessary expense of further litigation.

Because two United States Bankruptcy Judges in the United States Bankruptcy Court, Eastern District of California, Fresno Division are divided on this issue, and deciding this appeal would conserve judicial resources and provide guidance for bankruptcy judges and practitioners, this Court grants appellants' motion for leave to appeal the interlocutory order.

### STANDARD OF REVIEW

Appellants' issue raises a question of law. This Court reviews the bankruptcy court's conclusions of law *de novo*. *In re Alsberg*, 68 F.3d 312, 314 (9th Cir. 1995).

### DISCUSSION

This Court must determine whether a junior deed of trust that is treated as an unsecured claim in a Chapter 13 Plan in an "amount scheduled as contractually due to secured creditors" within the

meaning of 11 U.S.C. §707(b)(2)(A)(iii)(I) to allow the junior deed of trust to be included as a deduction on Form 22C, line 47. The Court's resolution of this dispute over the meaning of this statute begins with the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). "Where the statutory language is plain, 'the sole function of the courts–at least where the disposition required by the texts is not absurd–is to enforce it according to its terms...Courts must give meaning to every clause and word of a statute[.]'" *Kagenveama*, 541 F.3d at 872 (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004).

To calculate "disposable income" in a Chapter 13 bankruptcy under the circumstances specific to appellants, debtors may deduct from the "currently monthly income the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." 11 U.S.C. §707(b)(2)(A)(iii)(I). Appellants focus on the phrase "contractually due" to argue that because the junior deeds of trust were contractually due at the time of the filing, they fall within the meaning of the statute. Appellants argue that this Court must use a "snapshot" approach, rather than a forward-looking approach, to interpret the statute at the time of bankruptcy filing. In denying the Chapter 13 plan, the bankruptcy court emphasized that the term "secured creditors" modifies the term "contractually due," and reasoned that since the junior deeds of trust are not secure, they are not "contractually due to *secured* creditors." For the following reasons, this Court affirms the decision of the bankruptcy court.

Appellants' focus on the term "contractually due," without considering the full text of the statute, is unpersuasive. This Court must consider the full text of the statute, because "[c]ourts must give meaning to every clause and word of a statute." *Negonsott v. Samuels*, 507 U.S. 99, 106 (1983). The plain language of the statute modifies the term "contractually due" with the phrase "to secured creditors" that immediately follows it, to read: "all amounts scheduled as *contractually due to secured creditors*." 11 U.S.C. §707(b)(2)(A)(iii)(I). Thus, appellants' emphasis on part of the phrase ignores the plain text of the statute. Reading the phrase as a whole, appellants may only include as deductions those payments contractually due to *secured creditors*. The plain language of the text requires this interpretation, as the bankruptcy court pointed out: "It does not matter what payments were 'contractually due' (indeed most of the Debtors' debts were 'contractually due' in one form or another) if those payments were not due

to 'secured creditors.'" Decision, 9. Accordingly, to be included properly as a deduction, the holders of the junior deeds of trust must be secured creditors.

To determine whether the holders of the junior deeds of trust are "secured creditors," within the meaning of the statute, the Court looks to the applicable definitions found within the bankruptcy code. The term "creditor" is defined as an "entity that has a claim against the debtor." 11 U.S.C. §101(10). According to this definition, the holders of the junior deeds of trust are creditors, as they hold claims against the debtors. The statutory definition of "creditor," however, is limited if the "express language or the context require additional qualifications to be met. Such limitations may relate to the amount, nature, or *security status* of the debt[.]" 2 COLLIER ON BANKRUPTCY (15th Ed. Revised), §101.10 at 101-74 (emphasis added). Here, the term "creditor" is qualified by the term "secured." 11 U.S.C. §707(b)(2)(A)(iii)(I). Accordingly, the holders of the junior deeds of trust are not secured creditors within the meaning of the statute unless their claims are secure. *See In re Enewally*, 368 F.3d 1165 (9th Cir. 2004) (11 U.S.C. §506 "abolishes the use of terms 'secured creditor and 'unsecured creditor' and substitutes in their places the terms 'secured claim' and 'unsecured claim.'")

"Under the Bankruptcy Code, 'secured claim' is...a term of art; not every claim that is secured by a lien on property will be considered a 'secured claim.'" *In re Zimmer*, 313 F.3d 1220, 1223 (9th Cir. 2002). To determine whether, and to what extent, a claim is secure, courts use the formula as expressed in 11 U.S.C. §506(a)(1), entitled "Determination of secured status," which reads:

> an allowed claim of a creditor secured by a lien on property in which the estate has an interest...is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...and is an unsecured to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim.

Under this section, "a claim is secured only to the extent of the judicially determined value of the real property on which the lien is fixed." *Dewsnup v. Timm*, 502 U.S. 410, 414-15 (1992). Thus, "[a]lthough the conventional interpretation of 'secured' might include any claim in which the creditor has a security interest in the debtor's property, §506(a) makes clear that the status of a claim *depends on the valuation of the property.*" *Zimmer,* 313 F.3d at 1222-23 (emphasis added).

Appellants moved for a valuation of the residence through the *Lam* motions. In its valuation order, the bankruptcy court granted the relief sought by appellants; namely, to value the residence at

$300,000, to treat the junior deeds of trust as "completely unsecured" and "to strip that lien from the" residence. The parties do not dispute that the value of the residence is $300,000, the value of the residence is less than the superior deed of trust held by Countrywide, and the junior deeds of trust are to be treated as unsecured claims in the Chapter 13 Plan. Based on these undisputed facts, and according to the 11 U.S.C. §506(a)(1), the junior deeds of trust are wholly unsecured. *See also, Zimmer*, 313 F.3d at 1223 ("[I]t is plain that a [junior deed of trust] is an unsecured claim, because its deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house."). As a result, the holders of the junior deeds of trust are not secured creditors. Accordingly, appellants' inclusion of payments to the junior deeds of trust as deductions for "Future Payments on Secured Claims" on Line 47 of Form 22C was error.

This Court's decision does not conflict with *Kagenveama*, as appellants contend. In *Kagenveama*, the Court considered whether "proposed disposable income" meant "disposable income" as defined by 11 U.S.C. 1325(b)(2), projected over the "applicable commitment period" or whether that phrase connotes a forward-looking concept that only uses "disposable income" calculation as a starting point. 514 F.3d at 872. Appellants argue that in *Kagenveama*, the Court adopted the "snapshot" approach to determine "disposable income" in a Chapter 13 bankruptcy, and that this approach allows appellants to include payments to the junior deeds of trust as deduction on line 47. As discussed below, the opinion of this Court in does not conflict with the *Kagenveama* ruling.

The *Kagenveama* Court ruled that it was bound by the plain language of the text and the statutory definition of the term to interpret the statute. 541 F.3d at 874 ("plain language of [statute] links 'disposable income' to 'projected disposable income'" to require interpretation that the term "projected" modifies "disposable income" as defined by the bankruptcy code). Similarly, this Court's analysis is based on plain meaning of the statute and the statutory definition of the term "secured." Because the junior deeds of trust are not secured claims, they may not be deducted as such to calculate disposable income. A reading of the plain language of the text in full bolsters this Courts conclusion. Appellants may deduct "the total of all amounts *scheduled* as contractually due to secured creditors *in each month of the 60 months following the date of the petition*." 11 U.S.C. §707(b)(2)(A)(iii)(I) (emphasis added). Here, the junior deeds of trust should not be scheduled as secured claims in the Plan, because appellants

proposed to treat them as unsecured claims in the Plan. Appellants do not claim that they will pay the amounts deducted towards the junior deeds of trust in the 60 months following petition. Thus, payments to the wholly unsecured junior deeds of trust do not qualify as deductions under the plain meaning of the statute when read as a whole. Accordingly, the plain language of the statute requires that those amounts be excluded from line 47 of Form 22C.

In *Kagenveama*, the Trustee argued unsuccessfully that "disposable income" is a starting point that can be rebutted, supplemented by other evidence, and subject to modification based on anticipated changes in expenses or income. The Court rejected the notion that "Form 22C creates a presumptively correct definition of or a rebuttable presumption of 'disposable income'" based on the absence of such language in the text of the statute. 541 F.3d at 874. This Court's interpretation does not create a "rebuttable presumption" of the term "contractually due to secured creditors," because the determination of secured status is a bright-line rule as set forth in 11 U.S.C. §506(a)(1). At the time a debtor files a Chapter 13 bankruptcy plan, a junior deed of trust is either secured or unsecured based on that definition. *In re Lam,* 211 B.R. at 40. This is distinguished from the determination of "currently monthly income," which the *Kagenveama* Court considered. "Current monthly income" is defined as "the *average monthly income from all sources that the debtor receives*" during the *6-month period preceding the commencement of the case*, or a date upon which the current income is determined by the Court. 11 U.S.C. §1325(b)(2) (emphasis added). While a debtor's CMI is subject to change during the commitment period, the secured status of a junior deed of trust is not. In the instant action, the parties agree that the junior deeds of trust are wholly unsecured and are to be treated as unsecured claims in the Chapter 13 Plan. Appellants do not argue that the status of the junior deeds of trust may change during the commitment period or that the ruling of the bankruptcy court creates a rebuttable presumption of disposable income. In addition, there is no language in the statute that allows a claim that is to be treated as unsecured in the Plan to be deducted as a "secured claim" to calculate disposable income.

This Court rejects appellants' position that the junior deeds of trust qualify as deductions because they were contractually due on the date of the Chapter 13 petition filing. Appellants' argument rests on the assertion that *Kagenveama* requires a "snapshot" rule to calculate disposable income at the time of

filing.[2] The plain language of the text makes clear that only secured claims that will be paid during the 60-month commitment period shall be deducted from a debtor's CMI. While not "forward-looking," the text of the statute requires that only *future* payments on secured claims should be included as deductions. This is consistent with Form 22C, line 47, which is entitled "*Future* Payments on Secured Claims." (emphasis added). At the time of the filing the Plan, appellants knew that they would make no future payments on the junior deeds of trust, based on their proposed treatment of the junior deeds of trust as unsecured claims. Although the unsecured status of the claims was confirmed with the court's ruling on the *Lam* motions, appellants knew at the time of the filing of their petition that the junior deeds of trust were unsecured, based on the proposed value of the residence and the amounts due to the superior claim. As the bankruptcy court observed, "if the Residence had been sold on the day the petition was filed, the date of the proposed snap-shot, there would have been nothing–not one penny–from that sale to pay Chase or Green Tree. At the commencement of the case, the Junior Trust Deeds attached to nothing of any value." Decision at 10 (citing *In re Lam*, 211 B.R. at 40). Accordingly, the junior deeds of trust would not qualify as deductions under the snapshot rule.

Finally,"the disposition required by the plain text of [11 U.S.C. §707(b)(2)(A)(iii)(I)] is not absurd." *Kagenveama*, 541 F.3d at 875. Indeed, the Court's conclusion in this action avoids an absurd result. In a Chapter 13 bankruptcy, debtors are required to contribute all "projected disposable income" to unsecured creditors. 11 U.S.C. §1325(b)(1)(B). The calculation of disposable income determines the amount a debtor is required to pay to unsecured debtors during the commitment period of the Plan. Under appellants' interpretation of the statute, a debtor would be allowed to decrease significantly the amount he or she ultimately pays to an unsecured creditor by deducting an amount that he or she will never pay to that creditor. As discussed more fully above, appellants' interpretation conflicts with the plain meaning of the statute and would yield an absurd result.

---

[2] Although the Court rejected a "forward-looking" concept proposed to interpret the term "projected disposable income," appellants concede that the Ninth Circuit did not use the term "snapshot" in the *Kagenveama* opinion.

## Conclusion

For the foregoing reasons, this Court AFFIRMS the decision of the bankruptcy court. The clerk of court is directed to close this action.

IT IS SO ORDERED.

**Dated:      May 26, 2009**                      /s/ Lawrence J. O'Neill
                                                  UNITED STATES DISTRICT JUDGE